**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ARASH AHMADI** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1276-R** |
| | ) | |
| **DIAMONDBACK CORRECTIONAL FACILITY et al,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Arash Ahmadi, a noncitizen[1] and Afghani national proceeding *pro se*, filed a Petition for Writ of Habeas Corpus challenging his detention by U.S. Immigration and Customs Enforcement (ICE) under 28 U.S.C. § 2241. (ECF No. 1). United States District Judge David L. Russell referred this matter to the undersigned magistrate judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Respondents filed a Response and Petitioner filed a Reply (ECF No. 7 & 9). For the reasons set forth below, the undersigned recommends the Petition be **GRANTED**.

## I. BACKGROUND

Petitioner is a citizen of Afghanistan and entered the United Stated at or near Eagle Pass, Texas, on September 9, 2024, and was taken into custody by Border Patrol. (ECF No. 1-2:1). Petitioner served 120 days in federal prison for crossing the border illegally and then was returned to the custody of ICE officials on January 17, 2025. (ECF No. 1-

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

2:1). On February 6, 2025, Petitioner was interviewed by an asylum officer who determined that Petitioner had established a credible fear of returning to Afghanistan. (ECF No. 7-1:3). On February 12 2025, DHS charged Petitioner as removable as an alien present in the country who had not been admitted or paroled. (ECF No. 7-8). On June 12, 2025, an Immigration Judge denied Petitioner's Motions for Withholding of Removal and Asylum and ordered Petitioner removed to Afghanistan. (ECF No. 7-11). *See* ECF No. 8-3. Petitioner field two appeals, both of which were rejected for improper service. (ECF No. 7-12). The second appeal was filed July 28, 2025 and rejected August 6, 2025, which was outside the original 30-day time period to file an appeal. *See* ECF No. 7-12:3-4. In the rejection notice, Petitioner was informed that defects in the appeal would not extend the original 30-day appeal period (which had expired on July 14, 2025) and that if Petitioner wanted to file an appeal out of time, he may do so by filing a corrected appeal (with proper service) and a motion titled "Motion to Accept Late Appeal." (ECF No. 7-12:3). An independent search reveals that no proper appeal was ever filed, rendering the removal order administratively final on July 14, 2025.[2]

Respondents submit a declaration from Jeremi Honeycutt, deportation officer assigned to Petitioner's case, regarding the efforts which have been made to effectuate Petitioner's removal. (ECF No. 7-1). According to Mr. Honeycutt, as of August 20, 2025, a "Transportation Letter" (TL) was required to remove native Afghans back to

---

[2] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited July 16, 2026). Pursuant to 8 U.S.C. § 1252(b)(1), Petitioner had 30 days from the date the Immigration Judge ordered removal to file his appeal. The 30th day fell on Saturday, July 12, 2025, making the following Monday Petitioner's actual deadline.

Afghanistan. (ECF No. 7-1:4). In September 2025, a TL request was made for Petitioner, and Mr. Honeycutt readily admits that ICE does not maintain direct diplomatic relations with Afghanistan, but instead "works through the U.S. Diplomatic Mission for Afghanistan in Doha, Qatar and the Qatari Ministry of Foreign Affairs on requests" and "[t]here are no specific timelines for the issuance of transportation letters." (ECF No. 7-1:4).

In October 2025, March 2026, May 2026, a "status check" regarding the TL was conducted and issuance of the same was "pending." (ECF No. 7-1:4). On June 24, 2026, ICE requested "third country removal assistance" for Petitioner from the Department of State. (ECF No. 7-1:4). In the declaration, Officer Honeycutt states:

- "The State Department has successfully facilitated third country removals for ERO in the past;"
- Petitioner is "on the list for third country removal;" and
- In FY2024, ERO facilitated 132 removals of citizens of Afghanistan. In FY2025, ERO facilitated 132 removals of citizens of Afghanistan. In FY2026 YTD, ERO has facilitated 394 removals of citizens of Afghanistan. Based on the number of successful removals ERO has effectuated of Afghan citizens from FY2024 to April of FY2026, and the increasing number of removals each year, I believe removal of Ahmadi is significantly likely in the reasonably foreseeable future."

(ECF No. 7-1:5). Mr. Ahmadi states that ICE has not obtained any travel documents for him to any country and that "no third country" has agreed to accept him. (ECF No. 1-3:1). In his Petition, Mr. Ahmadi alleges that his detention is prolonged in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001). (ECF No. 1-3).[3] Petitioner seeks release and also

---

[3] Petitioner asserts a second "ground" for relief, but the Court need not consider this a separate ground as Mr. Ahmadi merely cites the jurisdiction of this Court to grant habeas relief. *See* ECF No. 1-4).

requests the Court to enjoin Respondents from re-detaining him or removing him to a third country "without certain procedural protections." (ECF No. 1-3:1).

## II. STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas* v. Davis, 533 U.S. at 687-88).

## III. THE COURT HAS JURISDICTION TO CONSIDER THE PETITION

Respondents argue that "[r]e-detaining a noncitizen for purposes of removal constitutes an enforcement mechanism of a removal order and, accordingly, a district court lacks jurisdiction to hear it. Petitioner's detention is for the purpose of executing his removal order. This falls squarely within the purview of §§ 1252(g) and (b)(9), and the Court accordingly lacks jurisdiction to consider his challenge." (ECF No. 7:13).

Citing *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 298 (3d Cir. 2020) and the pertinent regulations, Respondents state:

> The Court in *Tazu* noted the Petitioner's three-day re-detention and that "[i]f courts had not intervened, it would have removed him just three-and-a-half weeks after re detaining him." The Court clarified that Tazu's re-detention was "simply the enforcement mechanism the Attorney General picked to execute his removal," and Section 1252(g) thus funnel[ed] review away from the District Court. Although the detention in *Tazu* was a three-day detention, the same principle applies here. Petitioner has been detained in order to execute a valid removal. As such, this Court lacks jurisdiction over his claim under § 1252(g).
>
> Another provision of Section 1252 bars this Court's review. 8 U.S.C. § 1252(b)(9) states that if a claim "aris[es] from any action taken or

> proceeding brought to remove an alien," then review of the claim "shall be available only in judicial review of a final order." As the *Tazu* Court noted, "the legal questions he raises about the scope of the Attorney General's discretion to re-detain him are bound up with (and thus "aris[e] from") an "action taken" to remove him there.

(ECF No. 7:12-13). The Court should reject Respondent's arguments.

In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), the Supreme Court explained that § 1252(g)'s jurisdictional bar applies only to "three discrete actions" – the commencement of removal proceedings, adjudication of removal proceedings, and execution of removal orders. The Supreme Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* More recently, in *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) the Court reaffirmed this narrow reading, explaining that *Reno* "did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." Instead, the statutory language refers "to just those three specific actions themselves." *Id.*

The undersigned is not persuaded that § 1252(g) forecloses review of Petitioner's claims. Here, Petitioner "does not ask the Court to review the underlying merits of the removal decision." Nor does he ask the Court for a blanket stay of removal. Additionally, the Court should find that *Tazu* is factually distinguishable from Petitioner's case. In *Tazu*, the Third Circuit held that it was foreclosed from reviewing "a brief door-to plane detention" by ICE because such detention "is integral to the act of "execut[ing] [a] removal order[ ]." 975 F.3d at 298. Here, "the evidence in the record does not suggest

that [Petitioner's] removal was or is impending . . . such that his re-detention was a brief and integral part of executing his removal order." *Jimenez Chacon v. Lyons*, 811 F. Supp. 3d. 1299, 1309, No. 25-cv-977-DHU-KBM (D.N.M. Dec. 4, 2025). Thus, the undersigned concludes that § 1252(g) does not bar this Court from exercising jurisdiction to consider Petitioner's challenge to his detention.

Likewise, the Court should conclude that the Court does not lose jurisdiction under 8 U.S.C. § 1252(b)(9). Citing *Jennings v. Rodriguez*, 583 U.S. 281, 292- 95 (2018), the court in *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) noted that district courts in the Second Circuit "have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not." *Ceesay*, 781 F. Supp. 3d at 152 (citing *Torres-Jurado v. Biden*, 2023 WL 7130898 (S.D.N.Y. Oct. 29, 2023) at *2 (collecting cases); *Ahmed v. Freden*, 744 F. Supp. 3d 259, 264 (W.D.N.Y. 2024). The *Ceesay* court concluded Petitioner was not challenging the legality of his removal order, but instead was arguing that "his detention was unlawful because the government improperly revoked the order of supervision under which he had been released for more than a decade." *Ceesay*, 781 F. Supp. 3d at 153-154. The Court should find this reasoning applicable here. In sum, the Court should find that neither § 1252(b)(9) nor § 1252(g) precludes it from exercising jurisdiction over the instant Petition.

## IV. PETITIONER IS ENTITLED TO RELEIF UNDER *ZADVYDAS*

In Ground One, Petitioner asserts that his continued detention violates 8 U.S.C. § 1231(a). (ECF No. 1-3). The Court should agree.

### A. Legal Framework

Under 8 U.S.C. § 1231(a), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." *Id.* § 1231(a)(1)(A). The 90-day period is known as the "removal period." *Id.* After the removal period, ICE has discretion to detain inadmissible or criminal aliens. *Id.* § 1231(a)(6). However, detention of an alien subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the removal period. *See Zadvydas*, 533 U.S. at 701; *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating that "the reasonable period of post-removal detention is presumptively six months"). After that, a detainee may bring a habeas action to challenge his detention. *Zadvydas*, 533 U.S. at 688. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

To obtain habeas relief, a petitioner has the initial burden to show the post-removal-order detention has surpassed six months and to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Soberanes*, 388 F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable." (citation modified)). "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533

U.S. at 701. Further, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

In applying this limitation in the context of a habeas challenge to continued detention, the ultimate question for the court is "whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699. Significantly, the decision to be rendered by the Court is not "[t]he choice . . . between imprisonment and the alien 'living at large'" but "between imprisonment and supervision under release conditions that may not be violated." *Id.* at 696.

The definitive issue addressed in *Zadvydas* is contextually important and bears repeating here: "Whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States." *Id.* at 695. As the Supreme Court noted, detention, like that of Petitioner that occurs after the 90-day removal period, "has no obvious termination point." *Id.* at 697.

What constitutes a "significant likelihood of removal" and how to measure the "reasonably foreseeable future," particularly in light of the "rule of relativism" identified in *Zadvydas*, is incapable of any bright-line delineation. Instead the analysis is case-specific and fact driven. For that reason, district courts across the country have utilized an array of approaches in deciding when continued post-removal-period detention of an immigrant becomes unconstitutional and reached varying conclusions. Within this judicial district, judges have also looked to whether the petitioner has demonstrated "institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. 24-

464-SLP, 2024 WL 5465749 at *3 (W.D. Okla. Aug. 27, 2024), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025).

### B. The Length of Petitioner's Detention is Beyond What is Presumptively Reasonable

There is no dispute that Petitioner has been redetained beyond the six-month presumptively reasonable period of detention. And that was true as of the date he filed his Petition on June 1, 2026. At that time, he had been redetained for over seven months. And, as set forth, that redetention is now at the approximately nine-month mark and continues to grow.

### C. Petitioner has Shown Good Reason to Believe that There is No Significant Likelihood of Removal in the Reasonably Foreseeable Future

As noted, Petitioner's current redetention exceeded the presumptively reasonable six-month period at the time of filing the Petition, a point which Respondent concedes. See ECF No. 7:8 ("Respondents concede that Petitioner's detention post final order of removal is outside the presumptively reasonable six-month period as contemplated by *Zadvydas*."). To this end, although the length of the prior period of post-removal detention need not necessarily be considered here, the Court finds that "ICE's unsuccessful efforts at removing Petitioner during that prior period of post-removal detention remain relevant." *Khaliq v. Noem*, --- F. Supp. 3d. ---, 2026 WL 196631, at *7 (W.D. Okla. Jan. 26, 2026).

In addition to the passage of time in post-removal detention, Petitioner has established that the likelihood of him being removed to Afghanistan or a third country is not reasonably foreseeable. During the post-removal-order period, which began October

14, 2025, ICE has been unable to secure travel documents from either Afghanistan or any "third country." Respondents state that a TL is required for Petitioner to travel to Afghanistan and that three times during the post-removal period, status checks revealed that the TL request was "pending." (ECF No. 7-1:4). Respondents also state that that ICE does not maintain direct diplomatic relations with Afghanistan, but instead "works through the U.S. Diplomatic Mission for Afghanistan in Doha, Qatar and the Qatari Ministry of Foreign Affairs on requests" and "[t]here are no specific timelines for the issuance of transportation letters." (ECF No. 7-1:4). This information provides no guideline as to when, if ever, Petitioner might be issued a TL for Afghanistan, and does nothing to support Respondents' argument that there is a significant likelihood of removal to Afghanistan in the reasonably foreseeable future.

On June 24, 2026, ICE requested "third country removal assistance" for Petitioner from the Department of State. (ECF No. 7-1:4). According to Officer Honeycutt:

- "The State Department has successfully facilitated third country removals for ERO in the past;"
- Petitioner is "on the list for third country removal;" and
- In FY2024, ERO facilitated 132 removals of citizens of Afghanistan. In FY2025, ERO facilitated 132 removals of citizens of Afghanistan. In FY2026 YTD, ERO has facilitated 394 removals of citizens of Afghanistan. Based on the number of successful removals ERO has effectuated of Afghan citizens from FY2024 to April of FY2026, and the increasing number of removals each year, I believe removal of Ahmadi is significantly likely in the reasonably foreseeable future."

(ECF No. 7-1:5). However, as stated, Mr. Ahmadi asserts that "no third country" has agreed to accept him[4] and Mr. Honeycutt's declaration regarding the "increasing number of [Afghani] removals each year," does not indicate whether Afghanis were removed to Afghanistan upon the issuance of a TL or to a third country. Thus, the Court should find that the statistical evidence offered by Respondents is not persuasive.

In *Khaliq*, under similar circumstances, Chief U.S. District Judge Palk found that "Petitioner ha[d] shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" because "although ICE claim[ed] it [wa]s going to pursue travel documents to Palestine, no communications with that country ha[d] yet been initiated." *Khaliq v. Noem*, --- F. Supp. 3d. ---, 2026 WL 196631, at *8. The Court should agree with this reasoning and conclude that Petitioner has met his initial burden under *Zadvydas*.

**D. Respondents Have Failed to Rebut Petitioner's Showing**

Respondents' showing of a significant likelihood of Petitioner's removal in the reasonably foreseeable future is limited to the declaration by Mr. Honeycutt, but again, and for the forgoing reasons, the Court should find that the declaration falls short of rebutting Petitioner's burden of proving that his removal is not significantly likely in the reasonable foreseeable future. *See Messay v. Gantt*, *et al.*, No. CIV-26-896-J, 2026 WL 2019967, at *1 (W.D. Okla. July 13, 2026) (finding that Respondents had failed to rebut Petitioner's burden under *Zadvydas*, stating: "Respondents, on the other hand, have not

---

[4] (ECF No. 1-3:1).

identified any countries with which any level of progress has been made toward obtaining the country's acceptance of Petitioner nor provided any other information indicating that there is a significant likelihood of removal in the reasonably foreseeable future.").

Accordingly, the Court should find that Petitioner's removal is not significantly likely in the reasonably foreseeable future and Petitioner is entitled to habeas relief pursuant to 28 U.S.C. § 2241 as he is in custody "in violation of the Constitution or laws . . . of the United States." *Id.* § 2241(c)(2).

## V. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the Petition for habeas relief by ordering that Petitioner be released from custody immediately, subject to an appropriate Order of Supervision.[5]

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Any objection must be filed not later than **July 23, 2026**. If a party wishes to respond to the other party's objections, such response must be filed not later than **July 27, 2026**. *See id*. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

---

[5] *See Zadvydas*, 533 U.S. at 700 ("[T]he alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." (citations omitted)).

## VI. STATUS OF REFERRAL

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on July 16, 2026.

Shon T. Erwin

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE